IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FATIMA OSMANI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 3413 |
| v. ) | |
| ) | Magistrate Judge |
| MENARD, INC., individually and ) | Maria Valdez |
| d/b/a MENARDS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fatima Osmani ("Plaintiff" or "Osmani") allegedly slipped while shopping at a store owned and operated by Defendant Menard, Inc. ("Defendant" or "Menards"). Osmani alleges that Menards' negligence caused her injuries, and Menard has moved for summary judgment. [Doc. No. 32]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, Menards' motion is granted.

### BACKGROUND[1]

At approximately 7:00 p.m. on April 21, 2014, Osmani and her husband Mohammed Khan were shopping at the Menards store in Hanover Park, Illinois.

---

[1] Osmani has neither filed her own Local Rule 56.1 Statement of Material Facts ("Statement"), nor responded to the facts contained in Menards' Statement. Therefore unless otherwise noted, the following material facts are taken from Menards' Statement, and are deemed admitted for Osmani's failure to comply with Local Rule 56.1, which the Court interprets strictly. The Court still interprets Menards' facts in the light most favorable to Osmani. *See Adams v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003) (under Local Rule 56.1, courts have discretion to treat facts unopposed by the non-moving party as admitted, and the admitted facts are still interpreted in light most favorable to the non-moving party.).

1

[Doc. No. 34 at 2]. The Hanover Park Menards has a "garden center," where Menards sells trees and other plants. [*Id.*]. The garden center is located outside, and is exposed to the elements. [*Id.*]. According to the deposition testimony of Menards' assistant general manager Robert Buhl, Jr., the garden center is a "flat ground" area "with pallet racking with blocks, and plant tables." [*Buhl Dep. Tr.* 20:10-14, Doc. No. 36-1]. It is Menards' policy to place trees and potted plants onto these pallets. [*Id.* at 26:2-12]. The plants are placed on pallets to keep them off the ground, and for mobility so that employees may move them to different locations. [*Id.*]. Similarly, the plants are watered daily, at around 5:00 a.m. [*Id.* at 25:2-12].

Osmani and her husband went into the garden center to buy a fruit tree. [Doc. No. 34 at 2]. Three to four Menards employees were working in the garden center at the time Osmani and her husband went inside to shop. [Doc. No. 36-1 at 20:10-14]. After examining the selection of trees for a brief period, Osmani slipped and fell in "mud," on the ground in front of the fruit tree display. [Doc. No. 34 at 2]. According to photographs taken by Osmani's son and a Menards' employee, the mud was a mixture of top soil and wood chips that had accumulated on the ground in front of the fruit tree display. [*Id.*].

In their deposition testimony, Osmani could not remember the size of the soil mixture pile on the ground; while her husband estimated it was bigger than a "dinner plate." [*Osmani Dep. Tr.* 43:21 – 44:2, Doc. No. 34-1; *Mohammad Khan Dep. Tr.* 16:10 – 17:1, Doc. No. 34-4]. Neither Osmani nor her husband knew what happened to cause the soil mixture to be on the ground in front of the fruit tree

2

display. [Doc. No. 34 at 2]. Osmani assumed the source of the soil mixture was from the nearby trees. [*Osmani Dep*. 44:22 – 45:1]. They also did not know how long the soil mixture was on the ground before it caused Osmani to slip and fall. [Doc. No. 34 at 2]. Buhl testified he believed the soil mixture had come from "one of the tipped over trees or plants," but did not know how long the soil mixture had been on the ground before it caused Osmani to slip and fall. [*Buhl Dep*. 14:22-24, 16:10-16].

No specific Menards employee is tasked with cleaning up abnormal conditions. [*Id*. at 15:9 – 16:1]. Likewise, Menards employees do not perform a regularly scheduled patrol of the premises to monitor for abnormal conditions. [*Id*.]. Instead, all Menards employees are generally responsible for monitoring abnormal conditions in the course of their normal duties. [*Id*.]. All employees are trained to immediately fix or clean anything out of the ordinary, or let a general manager know that the condition would be unsafe. [*Id*. at 23:10-23].

**LEGAL STANDARD**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A "genuine"

3

dispute of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249-50, 252. In determining whether a genuine dispute of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## ANALYSIS

From the parties' moving papers, the only dispute is the narrow issue of whether Menards breached its duty to Osmani. As this is a diversity action, Illinois negligence law governs the Court's decision. In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them. *Marshall v. Burger King Corp.,* 856 N.E.2d 1048, 1057–58 (Ill. 2006); *Thompson v. Economy Super Marts, Inc.*, 581 N.E.2d 885, 888 (Ill. 1991); *Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (applying Illinois law); *Peterson v. Wal–Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001) (applying Illinois law).

A business will be found to breach its duty of maintaining a safe premises if the invitee slips on a foreign substance on its property, and the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the

4

business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, *i.e.*, the business had constructive notice of the substance. *See Newsom–Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 953 N.E.2d 427, 431 (Ill. App. Ct. 2011); *Pavlik v. Wal–Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001).

Menards argues that it is entitled to summary judgment because: (1) Osmani has not shown Menards' negligence placed the soil mixture on the ground; (2) Osmani has not shown Menards had actual or constructive notice of the soil mixture on the ground. The Court addresses each argument in turn.

### A. Placement of the Soil Mixture

Osmani argues enough circumstantial evidence exists to show Menards caused the soil mixture to be on the ground where Osmani fell. To prevail on this argument, Osmani must show (1) that the foreign substance was related to the defendant's business and (2) "offer […] some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises [...]." *Donoho v. O'Connell's, Inc.,* 148 N.E.2d 434, 439 (Ill. 1958); s*ee also Reed v. Wal-Mart Stores, Inc.,* 700 N.E.2d 212, 214 (Ill. App. Ct. 1998).

Osmani meets the first prong of the test. The soil mixture on the ground that caused Osmani's fall was less than a foot away from a potted plant being sold. The

5

potted plant appeared to contain the same soil mixture as the soil mixture on the ground. Even Menards' own assistant general manager Buhl stated the soil mixture on the ground had "come from one of the tipped-over trees or plants." As such, the soil mixture on the ground is clearly related to Menards' business of selling trees. However, Osmani does not set forth enough evidence to create a reasonable inference that a Menards employee more likely caused the soil mixture to be spilled from the potted plant onto the ground.

Osmani presents no affirmative evidence of negligence, or even factual assertions that could give rise to an inference of negligence. Instead, Osmani attempts to manufacture an inference that Menards, rather than a third-party, caused the soil mixture to be on the ground by generously interpreting Buhl's deposition testimony describing (1) Menards' policy of placing trees and potted plants onto pallets "for mobility so that employees may move them to different locations," and; (2) Menards' policy of watering the plants daily at around 5:00 a.m.

Neither piece of Buhl's testimony shows Menards, rather than a third party, was more likely cause of the soil mixture being placed on the ground. Buhl's testimony only describes why potted plants and trees are placed on pallets, and when the potted plants and trees are watered. Critically, it does not elaborate on the facts needed to infer that Menards was the likely cause of the condition such as: whether trees were in fact watered or moved to or from the pallets on that day, how often trees are sold and/or moved, or whether the moving or watering of trees generally causes their soil mixture to spill onto the ground. Without more evidence,

6

the Court finds it is equally likely that another customer or their child caused the spilling of the soil mixture onto the ground.

Osmani's citations to *Donoho*, and *Piper v. Moran's Enterprises*, 459 N.E.2d 1382 (Ill. App. Ct. 1984), are consequently inapposite as both of the plaintiffs in *Donoho* and *Piper* were able to present enough circumstantial evidence to infer the defendant was the more likely cause of the foreign substance. In *Donoho,* the plaintiff offered proof that the defendant's busboy was seen cleaning the table next to the onion ring on which plaintiff slipped, a mere fifteen minutes prior to plaintiff's fall. *See Donoho,* 148 N.E.2d at 440-41 ("[Plaintiff] presented additional circumstantial evidence that the onion ring on which she slipped was located beside the stand-up table cleared by the bus boy, that under the bus boy's practice of clearing up the tables food particles could drop to the floor, and testimony that after the bus boy cleared the stand-up table, no one else ate there or was in that area for some 15 minutes before plaintiff fell.").

In *Piper*, the plaintiff was able to show the pallet on which the plaintiff fell was stocked by employees two hours prior, and that the defendant circumstantially knew that its pallets could cause a fall, as the defendant instructed its employees to prevent the pallet's exposure by moving goods forward on the pallet and removing damaged pallets from the store. *See Piper*, 459 N.E.2d at 1389 ("Defendant developed precautionary policies of supervision and management which took into account problems arising from the use of pallets. All employees […] were expected to use their spare time to keep products on the front of the pallets […] From this

7

circumstantial evidence and the fact of the pallet's relation to Moran's business, it might reasonably be inferred that the condition of the pallet was more probably due to the negligence of employees rather than unidentified third parties.").

Here, there is no such evidence. The only evidence from Osmani is her testimony that she did not notice the soil mixture prior to her fall. Without more, Osmani only offers evidence that she slipped on a soil mixture that is contained in the trees sold by Menards, and such evidence fails to support an inference that Menards was the likely cause of the condition. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014), citing *Olinger v. Great Atl. & Pac. Tea Co.*, 173 N.E.2d 443, 446 (Ill. App. Ct. 1961) ("Even where there is proof that the foreign substance was related to defendant's business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury, [...] such evidence [is] insufficient to support the necessary inference,"); *see also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("We do not allow parties to send every speculation that they have to the jury despite an absence of evidence.").

**B. Notice of the Soil Mixture**

Osmani may still prevail if she establishes Menards had actual notice of the substance, or "the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, *i.e.*, the business had constructive notice of the substance." *Zuppardi*, 770 F.3d at 649. Osmani may establish constructive notice by presenting evidence that either "(1) the dangerous condition existed for a sufficient amount of time so that it would have been

8

discovered by the exercise of ordinary care; or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." *Id*. at 651.

Illinois courts use a case-by-case approach that examines both the length of time the spill existed, and the surrounding "circumstances." *Reid*, 545 F.3d at 483. Relevant circumstances include the area where the spill occurred, the time the spill occurred, the visibility of the spill, and the store's policies on patrolling its aisles for spills. *Id*. at 481-82. The "critical" question is "whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Id*. (internal quotation omitted). Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice. *Id*., citing *Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 666 (Ill. App. Ct. 2000).

Notably, Osmani points to three pieces of evidence she claims demonstrate that Menards had notice of the soil mixture on the ground: (1) Menards employees are generally responsible for checking floors for debris; (2) three to four employees were working in the garden center at the time of Osmani's fall; (3) Osmani and her husband saw no employees in the area where Osmani fell, or for the two to three minutes Osmani while was on the ground; and (4) Buhl first came to inspect the soil mixture at least 15 minutes *after* Osmani's fall. However, after an examination of these materials in support, Osmani cannot show Menards had either actual or constructive notice because she presents no evidence of when the soil mixture was

9

placed on the ground, and consequently how much time elapsed between the placement of the soil mixture on the ground and Osmani's fall.

Without a Local Rule 56.1 Statement, Osmani's evidence is speculation without evidence – and is insufficient in a summary judgment proceeding. *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1039 (7th Cir. 2016). Overlooking this deficiency, the evidence Osmani offers in support of her notice argument is still deficient. Even accepting Osmani's aforementioned evidence as true, the evidence is only relevant on the issue of constructive notice were Osmani able to provide any evidence establishing a timeframe for when the soil mixture came to be on the ground, such that a jury could then decide whether that timeframe was enough for Menards to actively or constructively notice, and sweep the soil clear.

The only evidence presented to the Court on the issue of timeframe is the testimony of Osmani and her husband. Osmani testified that she neither knew how long the soil existed on the ground prior to her fall. She likewise provides no information about how long she was physically near the trees while shopping. Mohammad Khan provides similarly scant detail. While he estimated that he was "in the store" (not necessarily the garden center) for 10-15 minutes prior to the fall [*Khan Dep*. 10:17-19]; he further states that he and Osmani proceeded immediately to the fruit tree area, and the fall happened almost immediately upon reaching the area where fruit trees were being sold. [*Id*. at 14:6 – 15:7]. This is simply not enough evidence to establish the critical factor needed for constructive or actual notice, how long the condition existed on the floor prior to the fall.

10

For that reason, Osmani's citation to *Peterson,* 241 F.3d at 605 is, again, inapposite. The plaintiff in *Peterson* presented evidence that two store employees had walked down the aisle "minutes" prior to the plaintiff's fall. Neither employee had seen the lotion spilled from the broken lotion bottle on the ground, nor had heard any sounds of breakage. This combined with the plaintiff's testimony that he and his wife had been in the aisle for between four and ten minutes, allowed the Court to infer the lotion was on the ground for at least four to ten minutes. Whether this time frame in a highly trafficked store area was enough to establish constructive notice on the part of Wal-Mart, was properly a question for the jury.

Unlike in *Peterson,* not a single piece of Osmani's evidence can establish how long the soil mixture existed on the ground prior to Osmani's fall. Discovery in this case is closed, and the omissions in Osmani's evidence are telling. In addition to Osmani's aforementioned evidentiary omissions concerning whether Menards' negligence caused the soil mixture to be on the ground, she also fails to attach any deposition testimony from customers or other garden center employees who could testify about garden center foot traffic at a time near Osmani's fall, whether they had actually noticed the soil mixture on the ground, whether they were in the fruit tree area at any point prior to Osmani's fall, or either sales records for garden center items or camera footage from the entrance of the interior portion of the garden center that could serve as circumstantial evidence of the garden center's busyness. Without such evidence, Osmani has presented no indicia of how long the soil mixture might have existed on the floor, or even evidence indicating that the

foot traffic near the fruit trees was so high that a jury could find Mohammad Khan's testimony about his brief moments near the trees was enough to establish constructive notice.

In sum, Osmani has asserted no facts, denied none of Menards' factual assertions, and submitted no evidence to support any of her legal theories. Osmani and her husband are the only witnesses to this incident and neither could describe the critical details necessary for Court to say they have met their burden on summary judgment.

## CONCLUSION

For the aforementioned reasons, Menards' motion to for summary judgment is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:**    July 13, 2017              _____
                                                                      **HON. MARIA VALDEZ**
                                                                      **United States Magistrate Judge**